UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
NOV 15 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

ELMIN KAZIC,

Defendant.

No. 4:17CR00533 RLW/NCC

**INDICTMENT**

**COUNT I**

The Grand Jury charges that:

A. **INTRODUCTION**

At all times relevant to this Indictment:

1. United Adventures Enterprise (UAE) and Business Travel Solutions (BTS) were companies registered in the State of Missouri by Elmin Kazic (hereafter Kazic). BTS was operated by J.H. and Kazic. UAE and BTS operated as telemarketing companies as that term is defined in Title 18 United States Code, Section 2325.

2. A "call center" is a place from which telemarketers make telephone calls to prospective clients.

3. "Lead lists" consist of names, addresses and telephone numbers of prospective clients.

4. "Pitch sheets" are scripts which tout the promotion of the goods or services provided by the telemarketing company and are designed to be read over the telephone to the prospective clients.

B. **THE CONSPIRACY**

5. From on or about March 1, 2013 until May 1, 2015, in the Eastern District of Missouri, and elsewhere,

**ELMIN KAZIC,**

the Defendant herein, together with those known, including J.H., A.G., and P.G. and those unknown, did knowingly and willfully agree and conspire to commit the following offenses against the United States:

a. Mail Fraud, that is, devising a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and in executing and attempting to execute said scheme, caused to be delivered by the United States Postal Service certain matter and things, in violation of Title 18, United States Code, Section 1341; and

b. Wire Fraud, that is, devising a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and in executing and attempting to execute said scheme, caused writings, signs, signals, and sounds to be transmitted by means of wire in interstate commerce, in violation of Title 18, United States Code, Section 1343.

C. **MANNER AND MEANS**

6. The means and methods by which the conspiracy was sought to be accomplished included, among others, the following:

a. Defendant and his co-conspirators falsely represented that UAE and BTS were in the business of renting timeshare properties. These false representations were made over the telephone and on a website.

b. Defendant and his co-conspirators targeted thousands of residents across the United States by obtaining lead lists of individuals (victims) who owned timeshare properties.

c. Defendant and his co-conspirators employed and trained individuals to telemarket UAE's and BTS's non-existence services. Defendant, his co-conspirators, and their employees contacted the victims, and using pitch sheets and variations thereof, induced victims to wire payment for the proffered, but actually non-existent, services.

d. The service proffered was to market the victims' unused weeks in their timeshare program and rent them on the open market. The script falsely claimed that BTS would rent out weeks of timeshare property belonging to the victim at a profit; often claiming the victim would profit $1,299 per week rented. In order to receive this service, the victims were required to pay a deposit, often an amount of $199 per week.

e. Victims were encouraged to, and did pay their deposit by credit card. After obtaining the victim's credit card number, UAE and BTS wired the number to Processor Bank where the businesses established a merchant card processing account. The Processor Bank then wired the proceeds into the businesses' merchant account. From there the conspirators wired funds to personal or business bank accounts controlled by defendant and his co-conspirators.

f. In order to facilitate the merchant account transaction and avoid unwanted scrutiny, defendant and his co-conspirators falsely represented to the Processor Banks that BTS was a computer technology businesses. Defendant and his co-conspirators created fraudulent

invoices which were sent to the Processor Banks upon request to verify the legitimacy of the transaction on the victim's credit card. The fraudulent invoice falsely stated that the victim had ordered computer related services such as web design, remote backup, and antivirus protection. Defendant and his co-conspirators forged the signature of the victim on the invoice.

g. UAE and BTS made no attempt to perform the services contracted by the victims. Defendant and his co-conspirators, after paying their employees, did retain the victim's money and distributed it among themselves.

D. **OVERT ACTS**

7. In furtherance of the conspiracy and to effect the objects of the conspiracy, defendant and his co-conspirators committed and caused the following overt acts:

a. On March 22, 2013, defendant and J.H. opened an account at Phone Power. Phone Power is a voice over IP service which provides telephone numbers for small businesses.

b. On or about April 5, 2013, defendant registered UAE as a business with the Missouri Secretary of State.

c. On or about April 5, 2013, defendant entered into a lease agreement for commercial property at 2716 Telegraph Road, St. Louis, Missouri. J.H. first identified and chose this property as the business location for UAE.

d. On or about May 30, 2013, an employee of UAE, S.G., placed a telephone call from St. Louis, Missouri to M.W.W. living in Winchester, Virginia, using a voice over IP service. The purpose of the call was to solicit M.W.W.

e. On or about May 30, 2013, M.W.W. provided S.G. with her credit card number with the understanding that she would be charged $995 for processing fees.

f. On or about February 27, 2015, defendant, on behalf of BTS, applied for, and received, a merchant card processing account from TransFirst, LLC. In the application, defendant falsely described BTS's business as "computer and computer peripheral equipment."

g. On or about February 27, 2015, a representative of BTS placed a telephone call from St. Louis, Missouri to N.W., living in Tampa, Florida. The representative offered to rent unused timeshare weeks owned by N.W. N.W. declined at that time.

h. On or about March 2, 2015, defendant placed a telephone call from St. Louis, Missouri to N.W., living in Tampa, Florida. At this time N.W. provided defendant with her credit card number with the understanding that she would be charged $597 for processing fees, but would receive a check in the amount of $1,200 within 90 days as profit for the rental of her timeshare weeks.

i. On or about March 2, 2015, defendant submitted N.W.'s credit card information through the recently obtained merchant card processing account asking that $597 be credited to BTS's account and charged to N.W.'s credit card.

j. On or about March 3, 2015, defendant and J.H. created a fraudulent invoice indicating that N.W. had purchased computer related goods and services from BTS in a total amount of $597. J.H. forged N.W.'s signature, dated February 27, 2015, on the sham invoice. The invoice also falsely listed a telephone number controlled by defendant as N.W.'s telephone number.

k. On or about March 3, 2015, defendant sent the fraudulent invoice to TransFirst in Bloomfield, Colorado in support of his prior request for processing of payment through N.W.'s credit card.

1. On or about March 4, 2015, defendant and J.H. arranged to have J.H.'s wife, S.H., make a phone call from Festus, Missouri to Trans First in Bloomfield, Colorado, posing as N.W. and confirming and authorizing $597 charge to N.W.'s credit card..

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL.

______________________________
FOREPERSON

JEFFREY B. JENSEN
United States Attorney

______________________________
JOHN J. WARE, #40880MO
Assistant United States Attorney